IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
March 1, 2016 Session

**STATE OF TENNESSEE v. TANYAWA SALLIE**

**Appeal from the Circuit Court for Lake County**
**No. 14-CR-9985      R. Lee Moore, Jr., Judge**

─────────────────

**No. W2015-00427-CCA-R3-CD  -  Filed August 15, 2016**

─────────────────

Defendant, Tanyawa Sallie, was indicted for the offense of cutodial interference, but a Lake County Circuit Court jury convicted her of custodial interference with voluntary return of the child, a Class A misdemeanor.  She was sentenced by the trial court to eleven months, twenty-nine days, with ten days to serve and the remainder of the time on supervised probation.  On appeal, Defendant challenges the sufficiency of the evidence in support of her conviction and argues that the trial court erred in sentencing by considering her 2004 felony conviction in an unrelated matter and by imposing an excessive sentence.  After a careful review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, P.J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Shantell S. Suttle, Cordova, Tennessee, for the appellant, Tanyawa Sallie.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; C. Phillip Bivens, District Attorney General; and Renee M. Creasy, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

### I.      Background

We will refer to the minor victim by her initials, or as "the child."  On Sunday, April 6, 2014, Defendant failed to return her five-year-old daughter, J.H., to the child's father, Joseph Collins, III, at the end of her scheduled weekend visitation, in violation of a custody order.  On Tuesday, April 8, 2014, Defendant was arrested when she went to

the Lake County Juvenile Court Clerk's Office with J.H. seeking to file an emergency petition for change of custody. Defendant was subsequently indicted by the Lake County Grand Jury for custodial interference, a Class E felony, in violation of Tennessee Code Annotated section 39-13-306.

The State's first witness at Defendant's jury trial was Lake County Juvenile Court Clerk Roger Shirley, who identified a certified copy of the custody order involving the child, which was admitted as an exhibit. Mr. Shirley testified that on Monday, April 7, 2014, Defendant telephoned him about filing an emergency petition for change of custody of the child. Because he knew Defendant was represented by counsel, he advised her to contact her attorney. The next morning, Defendant came to his office seeking to file an emergency petition. Defendant told him she had been unable to reach her attorney and indicated she thought she could obtain a custody petition from the Lake County Juvenile Court Clerk's Office, as in Shelby County. Mr. Shirley testified that he explained to Defendant that Lake County did not provide custody petitions and that she would have to have her attorney prepare the paperwork for her. He said that sometime during the course of their conversation, Defendant informed him that J.H. was outside in her vehicle with her two other children.

Mr. Shirley testified that he was aware there was a pending arrest warrant for Defendant. He, therefore, notified the sheriff's department that Defendant was in his office. Sheriff's deputies took Defendant into custody, and Mr. Shirley went outside with the deputies to remove Defendant's children from Defendant's vehicle. Mr. Shirley said that Mr. Collins took custody of J.H., while Mr. Shirley kept Defendant's two older children in his office until Defendant's family members came from Memphis to pick them up.

On cross-examination, Mr. Shirley acknowledged that Defendant expressed concern about J.H.'s safety while in the custody of Mr. Collins. He further acknowledged that he never told Defendant that she had an outstanding arrest warrant and that Defendant volunteered the information that J.H. was outside in her vehicle.

Joseph Collins, III, testified that the custody order provided Defendant with weekend visitation with J.H. on the first, third, and fifth weekends of the month, from 6:00 p.m. Friday until 6:00 p.m. Sunday. He said he, his wife, and J.H. arrived at the parking lot of the Lauderdale County Sheriff's Department, the location where he and Defendant met to exchange custody, at approximately 5:45 p.m. on Friday, April 4, 2014. When Defendant drove up with her son and older daughter, he approached her vehicle because there was a matter involving J.H. that he wanted to discuss with her. He told Defendant's son to let Defendant know that he wanted to speak with her, but Defendant's son said, "[N]o." Defendant went into the police station, and Mr. Collins followed her.

2

Defendant, however, started complaining to the police officers that Mr. Collins had been drinking and was harassing her, so he left.

Mr. Collins testified that some officers followed him out of the building, and one of them asked if he smelled beer on his breath. He said he answered no and volunteered to take a breathalyzer test, but the officer said nothing else to him. Mr. Collins stated that he had not been drinking and was not under the influence of any intoxicant. However, to avoid any further conflict, he got into the passenger seat of his vehicle and his wife moved to the driver's seat. Mr. Collins testified that J.H. left with Defendant without his ever having the opportunity to talk with Defendant about the issue he had wanted to discuss.

Mr. Collins testified that he arrived at the parking lot to pick up the child at 5:45 p.m. on Sunday, but left at 6:15 or 6:20 p.m. after a Lauderdale police officer informed him that Defendant had called to tell the police she would not be returning J.H. because Mr. Collins did not have a driver's license. On Tuesday or Wednesday of that same week, he received a telephone call from the Tiptonville Police Department informing him that his daughter was possibly at the courthouse. When he arrived, he found J.H. standing outside a white Jeep. Mr. Collins testified that he had a valid driver's license on April 4, 2014.

On cross-examination, Mr. Collins acknowledged that he took three prescription medications each morning and two at night, but denied that any of his medications contained warnings against driving. He testified that he drank alcohol but only a "[c]ouple of beer [sic] at night." He denied that he had any recent DUIs, testifying that his DUI was "about eight years ago."

Leonora Collins, Mr. Collins' wife, testified that when Mr. Collins approached Defendant's vehicle on Friday, April 4, and told Defendant's son that Mr. Collins wanted to talk to Defendant, Defendant rolled down her window and told her son not to talk to Mr. Collins and to get the police. Defendant then exited the vehicle and went into the police station followed by Mr. Collins. Approximately ten to fifteen minutes later, Defendant, Mr. Collins, and one or two police officers came outside. Mrs. Collins testified that she could tell from the tone of their voices that "the conversations [sic] wasn't going too great" so she got out of the passenger side of the vehicle, let J.H. out of the car, and told Mr. Collins that they should leave. She said one of the officers was "insisting that [Mr. Collins] had been drinking," but Mr. Collins had not, to her knowledge, been drinking that day and did not appear to her to be intoxicated.

Mrs. Collins testified that Defendant failed to show when they returned to pick up J.H. on Sunday evening and never communicated directly with them to let them know she

3

was not bringing the child back. On cross-examination, she testified that Mr. Collins had not had a recent DUI.

The State's final witness, Deputy Robert Perkins of the Lake County Sheriff's Department, testified that he took out an arrest warrant for Defendant based on the events of the April 4-6, 2014 weekend visitation and arrested Defendant in Mr. Shirley's office. After Defendant was in custody, she accompanied them outside and instructed her teenaged children to open the door to her vehicle and let J.H. out. On cross-examination, Deputy Perkins testified that he took out the arrest warrant on the same morning of Defendant's arrest. He said he did not know whether Defendant was already in Mr. Shirley's office at the time the warrant was being prepared.

Defendant testified that the incident that Mr. and Mrs. Collins described in their testimony did not occur during the April 4 exchange of custody, but during the previous custody exchange in March. She said that on that earlier date, Mr. Collins wanted to speak to her, but she refused because he was "very rude" and calling her names. She stated that Mr. Collins told her seventeen-year-old son, who had gotten out of her car to receive J.H., that he would not allow Defendant to have her weekend visitation if Defendant refused to talk to him. Defendant testified that she responded by getting out of her vehicle and going into the police station. She said that Mr. Collins ran after her and that they arrived at the door at about the same time. Mr. Collins shoved her, and she shoved him back. Mr. Collins then began yelling to the police officers that she had hit him. Defendant testified that Mr. Collins was staggering and appeared to her to be intoxicated, which caused her concern about J.H.'s welfare because she knew that Mr. Collins had at least two prior DUIs.

Defendant testified that Mr. Collins once again appeared to be intoxicated, with a staggering gait and slurred speech, when he showed up with J.H. for the April 4 weekend custody exchange. This time, however, he was not accompanied by his wife. Defendant said she did not return J.H. at the end of the weekend visitation out of concern for her safety, testifying that, in addition to Mr. Collins' prior DUIs, she was also aware that he had been involved in a recent automobile accident in which his vehicle had flipped three times. She stated that she contacted the court "first thing" on Monday morning to voice her concerns and was instructed by Mr. Shirley to come to court to file a petition. When she showed up the next day, Mr. Shirley told her there was no petition for her to file. He then stepped out of the room and returned with the officers, who took her into custody. Defendant testified that no one ever asked her to get J.H. from the vehicle before she was arrested.

On cross-examination, Defendant insisted that her recollection was correct that the incident described by Mr. and Mrs. Collins occurred in late March rather than April. She

acknowledged she did not file an emergency custody petition following that March incident but said she had called the Department of Children's Services to report it. She also stated that she called dispatch at 4:00 p.m. on Sunday, April 6, to let them know she would not be returning J.H. and later that same day went to the justice center to file a report.

Courtney Little, Defendant's son, testified that during the custody exchange on the Friday that preceded Defendant's arrest, he got out of Defendant's vehicle to get J.H., but Mr. Collins refused to turn her over, telling him that he wanted to talk to Defendant. Defendant did not want to talk to Mr. Collins, however, so Mr. Little went inside to get the sheriff. Mr. Little described Mr. Collins as appearing "kind of intoxicated," testifying that "[h]is words were kind of slurred and his gestures." He said he recalled nothing about the prior weekend custody exchange.

After deliberating, the jury convicted Defendant of the lesser-included offense of custodial interference with voluntary return of the child, a Class A misdemeanor.

<u>ANALYSIS</u>

## I.  Sufficiency of the Evidence

Defendant first contends that the evidence is insufficient to support her conviction.

When an appellant challenges the sufficiency of the convicting evidence, the standard for review by an appellate court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); Tenn. R. App. P. 13(e). The State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of witnesses and the weight and value to be afforded the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh or reevaluate the evidence, nor will this court substitute its inferences drawn from the circumstantial evidence for those inferences drawn by the jury. Id. Because a jury conviction removes the presumption of innocence with which a defendant is initially cloaked at trial and replaces it on appeal with one of guilt, a convicted defendant has the burden of demonstrating to this court that the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" State v. Dorantes, 331

S.W.3d 370, 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)).

Tennessee Code Annotated section 39-13-306 provides in pertinent part:

(a) It is the offense of custodial interference for a natural or adoptive parent . . . of a child younger than eighteen (18) years of age to:

. . . .

(2) Detain the child within this state . . . after the expiration of the noncustodial natural or adoptive parent or guardian's lawful period of visitation, with the intent to violate . . . a temporary or permanent judgment or a court order[.]

. . . .

(c) It is a defense to custodial interference:

(1) That the person who removed the child . . . reasonably believed that, at the time the child . . . was removed, the failure to remove the child . . . would have resulted in a clear and present danger to the health, safety, or welfare of the child . . . ; or

(2) That the individual detained or moved . . . was returned by the defendant voluntarily and before arrest or the issuance of a warrant for arrest.

. . . .

(e) Custodial interference is a Class E felony, unless the person taken from lawful custody is returned voluntarily by the defendant, in which case custodial interference is a Class A misdemeanor.

Tenn. Code Ann. § 39-13-306(a)(2), (c), (e) (2014).

Defendant argues that the evidence showed that she had "legitimate concerns about her child and was only trying to protect her and not to detain the child in [an] attempt to violate the Court's Order." The State argues that there was ample evidence to sustain the conviction. We agree with the State.

6

In a light most favorable to the State, the evidence shows that Defendant intentionally violated the custody order by not returning the child at the end of her scheduled weekend visitation. As the State points out, the trial court, over the State's objection, instructed the jury as to both statutory defenses to the offense of custodial interference. By convicting Defendant of the lesser included offense of custodial interference with voluntary return of the child, the jury obviously found neither defense applicable under the facts but that Defendant was entitled to credit for having voluntarily returned the child following her arrest. We conclude that the evidence is sufficient to support Defendant's conviction.

## II.    Sentencing

Defendant's remaining issues relate to sentencing. Defendant argues that the trial court erred by: considering evidence of an old felony conviction, which was "not relevant to the issue" and whose "probative value [was] substantially outweighed by the danger of unfair prejudice"; and by imposing an excessive sentence under the circumstances of the case, where Defendant "expressed legitimate concerns . . . for the safety and well-being of her child" and there was no evidence that Defendant was an habitual criminal or had constant contact with the criminal justice system.

As an initial matter, we agree with the State that Defendant has waived consideration of her sentencing issues by her failure to include the transcript of the sentencing hearing in the appellate record. See Tenn. R. App. P. 24(b) ("[T]he appellant shall have prepared a transcript of such part of the evidence or proceedings as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal."); State v. Troutman, 979 S.W.2d 271, 274 (Tenn. 1998); State v. Ballard, 855 S.W.2d 557, 560-61 (Tenn. 1993).

We further agree that, regardless of waiver, Defendant would not be entitled to relief on the basis of these issues. Trial courts are granted great discretion and flexibility in misdemeanor sentencing determinations, see Troutman, 979 S.W.2d at 273, and it is proper for the court to consider a defendant's entire criminal history in determining an appropriate sentence. See Tenn. Code Ann. § 40-35-114(1).

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, PRESIDING JUDGE